653 P.2d 860

**Frank McKAY, Petitioner-Appellee,**

v.

**Hon. Thomas E. DAVIS, Metropolitan Judge, Respondent-Appellant.**

**No. 13945.**

Supreme Court of New Mexico.

Sept. 30, 1982.

Rehearing Denied Nov. 2, 1982.

Steven Schiff, Dist. Atty., Luis G. Stelzner, Sp. Asst. Dist. Atty., Albuquerque, for respondent-appellant.

John L. Walker, Albuquerque, for petitioner-appellee.

## OPINION

PAYNE, Justice.

Frank McKay was arrested for driving while under the influence of liquor (DWI). When the arresting officer requested that he submit to a breath-alcohol test, McKay refused. At the pretrial conference, he informed the appellant, Judge Thomas E. Davis of the Metropolitan Court, that he

would move to exclude any references at trial to his refusal to take the test. The Judge then advised McKay that he would permit the introduction of and comment on such evidence. Thereafter, McKay obtained a writ from the District Court prohibiting the introduction of or comment on evidence of McKay's refusal to take the test.

The question of whether evidence of a defendant's refusal to take a breath-alcohol test is admissible at trial is one of first impression in New Mexico. Davis argues that it is admissible under the Implied Consent Act, §§ 66–8–105 through 66–8–112, N.M.S.A.1978 (Orig. Pamp. & Cum.Supp. 1982), under U.S. Const.Amend. V, and under N.M.R.Evid. 401, N.M.S.A.1978. We agree and reverse the District Court.

## I.

■ McKay argues that Section 66–8–111, N.M.S.A.1978, and *State v. Wilson,* 92 N.M. 54, 582 P.2d 826 (Ct.App.1978), plainly create a statutory right to refuse to take a breath test and therefore mandate the exclusion of evidence of refusal. We hold that the Implied Consent Act, including Section 66–8–111, does not support McKay's position. Numerous cases have held that there is no constitutional right to refuse to take tests that produce this type of evidence. *See Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *People v. Thomas,* 46 N.Y.2d 100, 412 N.Y.S.2d 845, 385 N.E.2d 584 (1978); *See also State v. Richerson,* 87 N.M. 437, 535 P.2d 644 (Ct.App.), *cert. denied,* 87 N.M. 450, 535 P.2d 657 (1975). In fact, the New Mexico Legislature made the right to refuse such tests conditional when it provided that one's license could be revoked if the "right" were exercised. *See* §§ 66–8–107 and 108. Therefore, the right granted by the Legislature is merely the right not to be forcibly tested after manifesting refusal. The scope of this opinion will not, however, include a discussion of what may happen to a defendant upon his refusal to take a chemical test. Such a discussion would be collateral to the specific issue raised in this appeal.

■ The first step in analyzing the evidentiary use of the refusal to submit is to review the legislative purposes of the Implied Consent Act. The Implied Consent Act is intended to deter driving while intoxicated and to aid in discovering and removing the intoxicated driver from the highway. These purposes could be frustrated if evidence of refusal were held inadmissible in DWI cases. In short, a defendant would be rewarded for refusing to cooperate with the scheme established by the Legislature. Specifically, a guilty defendant who took a chemical test could face a more severe penalty (a jail term or fine or both) than would a guilty defendant who did not cooperate (license suspension or revocation). Moreover, if the test results are not introduced at the DWI trial and the court is not informed about the driver's refusal to submit, the suppression of this evidence could create the mistaken impression that no test was offered.

■ The next step leading to a solution to the question raised in this appeal is to review the alleged "right to refuse" created by the New Mexico Implied Consent Act. The Implied Consent Act does not grant a statutory right to refuse this kind of test. In *State v. Wilson, supra,* the Court of Appeals reviewed the lower court's suppression of blood test results which were obtained despite defendant's refusal. The court stated: "The exclusion of the blood test was appropriate. The sample was taken in violation of a statutory right." *Id.* at 56, 582 P.2d at 828 (citation omitted). McKay interprets this language as referring to a statutory right to refuse. However, it is clear that the *Wilson* court was interpreting that portion of Section 64–22–2.11(A) N.M. S.A.1953 (2d Repl.Vol. 9, pt. 2, 1972), identical to Section 66–8–111(A), providing that once a person refuses to take a chemical test, "none shall be administered." In *Wilson,* the test was administered in open violation of that statutory prohibition. This statutory right referred to by the court was the right not to be forcibly tested after manifesting refusal. *See also State v. Miller,* 257 S.C. 213, 185 S.E.2d 359 (1971). Merely because the Legislature opted

against forcible testing, it does not logically follow that the Legislature intended to create a statutory right to refuse to take the test. What actually exists is the driver's statutory power to refuse to submit to the physical act of intrusion upon his body. To call such a power to refuse a "right" to refuse is a misnomer. This incorrect labeling clouds the issue of whether the fact of refusal can be used as evidence in a later criminal trial. By correctly labeling the statutory power to refuse as a power rather than a right, the admissibility of the refusal as evidence is rendered clearly proper.

We therefore hold that evidence of a defendant's refusal to take a breath-alcohol test is admissible under the Implied Consent Act.

## II.

In *Schmerber, supra,* the United States Supreme Court held that withdrawal of blood from a defendant for chemical analysis did not constitute testimonial evidence. The Court stated that the fifth amendment privilege against self-incrimination was not violated by this procedure. Relying on *Schmerber, supra,* the State argues that McKay's refusal to take the test is neither compelled nor testimonial communication of the type protected by the fifth amendment. We agree.

As previously discussed, there is no constitutional right to refuse to take a chemical test. *See Schmerber, supra; People v. Thomas, supra.* Therefore, admitting refusal evidence cannot penalize one for exercising a constitutional right. *Hill v. State,* 366 So.2d 318 (Ala.1979). The essence of this analysis is contingent on whether the refusal is found to fall within the ambit of fifth amendment protection. Traditional fifth amendment analysis involving this type of evidence has been one of distinguishing "communications" or "testimony" from "real or physical evidence." *See Schmerber, supra.* Although this distinction is often a "helpful framework for analysis * * *," there are "many cases in which such a distinction is not readily drawn." *Id.* 384 U.S. at 764, 86 S.Ct. at 1832. The case at bar is one such case.

The inapplicability of general fifth amendment principles to the situation presented in this appeal was discussed in two federal court decisions which dealt specifically with the admissibility of refusal evidence. In *Newhouse v. Misterly,* 415 F.2d 514 (9th Cir.1969), the Ninth Circuit was asked to decide whether the introduction of and comment on evidence of refusal to take a blood test violated the fifth amendment. The Ninth Circuit concluded that " * * * a refusal to take a blood test is not a testimonial 'statement' within the Fifth Amendment; rather, it is best described as conduct indicating a consciousness of guilt." 415 F.2d at 518 (citation omitted). Thus, the court concluded that no constitutional provision bars the use of refusal to submit as evidence.

In *Welch v. District County Court of Vermont Unit, Etc.,* 594 F.2d 903 (2nd Cir. 1979), the court also concluded that no constitutional rights of the driver had been violated by using his refusal to submit to chemical testing as evidence. In reaching that conclusion, the court stated:

> [T]here is nothing unconstitutional in the manner in which Vermont has chosen to condition its statutory right to refuse. *The statute does not compel a driver refusing to take the test to surrender any constitutional right.* It is merely an explicit recognition of the practical existence of situations that might develop where a driver simply will not cooperate even though required to by state law, such as resort by the police to force in an effort to obtain the physical evidence to which they are entitled.

*Id.* at 905 (emphasis added).

We reach the same conclusion announced in *Newhouse* and *Welch.* As both decisions point out, because there is no constitutional right to refuse, any testimony about the refusal to submit does not burden the fifth amendment. His act of refusal merely exposes him to the drawing of inferences, *see People v. Ellis,* 65 Cal.2d 529, 55 Cal.Rptr. 385, 421 P.2d 393, (1966), just as does any other act.

Therefore, we hold that the introduction of and comment on McKay's refusal to take a test does not violate U.S.Const.Amend. V.

### III.

In the instant case, the district court held, as a matter of law, that evidence of a defendant's refusal to take a chemical test was irrelevant, based on *State v. Chavez,* 96 N.M. 313, 629 P.2d 1242 (Ct.App.), *cert. denied,* 96 N.M. 543, 632 P.2d 1181 (1981). We disagree.

It is well established that evidence of one's consciousness of guilt is relevant and admissible. *See, e.g., State v. Trujillo,* 95 N.M. 535, 624 P.2d 44 (1981) (flight or aborted plan of flight); *State v. Nelson,* 65 N.M. 403, 338 P.2d 301, *cert. denied,* 361 U.S. 877, 80 S.Ct. 142, 4 L.Ed.2d 115 (1959) (resisting or avoiding arrest); *State v. Gonzales,* 93 N.M. 445, 601 P.2d 78 (Ct.App.1979) (armed robbery). By definition, " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.M.R. Evid. 401, N.M.S.A.1978.

In *State v. Jackson,* Mont., 637 P.2d 1 (1981), Chief Justice Haswell, in his dissent, stated the following in his support of the relevancy of refusal evidence:

> [R]efusal to take a chemical test for intoxication may indicate the defendants' fear of the results of the test and his consciousness of guilt, and if the defendant has some other explanation for the refusal, such explanation can be considered by the jury in determining whether the refusal is to be construed as consciousness of guilt. It would appear to me that such evidence could support an inference of consciousness of guilt. * * "

*Id.* at 6 (citations omitted).

■ We agree with this statement and hold that a defendant's refusal to take a chemical test is relevant to show his consciousness of guilt and fear of the test results.

McKay argues that because of the myriad reasons for which a defendant could refuse such a test, the evidence is *per se* irrelevant. However, we find the inferences of fear of the breath-alcohol test results and consciousness of guilt to be reasonable inferences and not irrelevant. This type of evidence is similar to and no less probative than evidence of flight or resisting arrest, which is admissible. *See State v. Esperti,* 220 So.2d 416 (Fla.Dist.Ct.App.1969). Of course, it is not inconceivable that some fact patterns might render evidence of refusal irrelevant. In such cases, the trial court could properly exclude the evidence. Nevertheless, we hold that this kind of fact pattern was not present in the instant case.

### IV.

We find nothing in the foregoing authority to indicate that the evidence of McKay's refusal to take a test is inadmissible as a matter of law on statutory, constitutional, or relevancy grounds.

Accordingly, we reverse the district court's grant of the writ of prohibition and remand the case for further proceedings consistent with this opinion.

IT IS SO ORDERED.

EASLEY, C.J., and RIORDAN, J., concur.