2001-NMCA-109

36 P.3d 446

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Roberto SANCHEZ, Defendant–Appellant.**

**No. 21,752.**

Court of Appeals of New Mexico.

Nov. 7, 2001.

Certiorari denied, No. 27,227, Dec. 12, 2001.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Nina Lalevic, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

BOSSON, Chief Judge.

{1} Defendant, Roberto Sanchez, appeals from the judgment and sentence of the trial court for aggravated driving while under the influence of alcohol (DWI), pursuant to NMSA 1978, Section 66–8–102(D)(3) (1999). On appeal, Defendant raises four issues. Defendant argues that (1) there was insufficient probable cause to arrest him for DWI, (2) there was insufficient evidence to support his conviction for aggravated DWI, (3) statements made to the arresting officer should have been suppressed for failure to advise Defendant of his *Miranda* rights, and (4) the trial court erred by not appointing new counsel for Defendant at trial. Not persuaded by Defendant's arguments, we affirm.

## BACKGROUND

{2} Defendant approached a DWI roadblock on August 22, 1999. Officer Massis was one of the officers working the roadblock. Officer Massis approached Defendant's vehicle, after Defendant had stopped at the roadblock, and asked Defendant for his driver's license, registration and proof of insurance. Instead of a driver's license, Defendant gave Officer Massis a New Mexico identification card. Further questioning by the officer revealed that Defendant was driving with a revoked license. While talking to Defendant, Officer Massis noticed that Defendant had a strong odor of alcohol on his breath, and blood-shot, watery eyes. According to the officer's testimony, when asked if he had been drinking, Defendant responded that he had consumed two beers that night. At this point, Officer Massis told Defendant to pull over to the side of the road and get out of the car so that he could administer the field sobriety testing. The officer told Defendant to move to the front of his patrol car so that the tests could be videotaped. The videotape, which was ad-

mitted into evidence, shows that Defendant flatly refused to consent to the field sobriety testing saying, "I am not going to do nothing. Let's go to jail." It is also clear, from the videotape, that Defendant was wearing a leg brace at the time. After Defendant refused to consent to the field sobriety testing, Officer Massis placed him under arrest for DWI, and for driving with a revoked license. Defendant offered no explanation for refusing to take the field sobriety tests, and only alluded to having a knee problem later, after the officers had performed a pat-down and were in the process of helping Defendant into the patrol car.

{3} At trial, Officer Massis testified that, prior to Defendant's refusal to consent to the field sobriety testing, he thought there was reasonable suspicion, but not probable cause, to conclude that Defendant was guilty of DWI. When asked what brought him to the point of determining that he did have probable cause to arrest Defendant, the officer testified, "because [Defendant] refused to do my field sobriety tests." After Defendant refused to perform field sobriety tests, Officer Massis placed him under arrest, read him the Implied Consent Act, and asked him if he would take a blood test. *See* NMSA 1978, §§ 66–8–105 to –112 (as amended through 1993). Defendant also refused to consent to a blood test.

{4} At a bench trial, Defendant testified that he told Officer Massis that he would not take the field sobriety testing because of his bad knee. However, the videotape does not show Defendant offering any such explanation. At trial, Defendant could not explain why that alleged portion of the conversation was not on the videotape. The trial judge ruled that the videotape had not been altered, and found that Officer Massis had probable cause to question and detain Defendant based on his observations. Additionally, the trial judge found that Defendant's refusal to take the field sobriety testing could indicate a consciousness of guilt, and that Defendant's refusal, combined with the other factors observed by the officer, justified Defendant's arrest. Ultimately, the trial court convicted Defendant of aggravated DWI un-

der Section 66–8–102(D)(3), as well as driving with a revoked license.

## DISCUSSION

### Officer Massis Had Probable Cause to Arrest Defendant For DWI

{5} Defendant contends that Officer Massis lacked probable cause to arrest him for DWI because Defendant did not exhibit signs of impaired driving. At trial, Officer Massis conceded that Defendant was not driving improperly, and that Defendant would not have been stopped, if not for the roadblock. Defendant places great emphasis on the officer's testimony that, until Defendant refused to perform the field sobriety testing, Officer Massis felt that he had no more than reasonable suspicion that Defendant might be driving under the influence. Defendant argues that his refusal to perform the field sobriety testing, without any direct evidence of impaired driving, did not rise to the level of probable cause. We disagree that the officer needed to observe Defendant driving, and conclude that Officer Massis had probable cause for an arrest, based on everything the officer observed about Defendant.

{6} A police officer has probable cause when facts and circumstances within the officer's knowledge, or about which the officer has reasonably trustworthy information, are sufficient to warrant an officer of reasonable caution to believe that an offense is being committed or has been committed. *State v. Salas,* 1999–NMCA–099, ¶¶ 17–18, 127 N.M. 686, 986 P.2d 482. It is unlawful for any person who is under the influence of intoxicating liquor to drive any vehicle within the state. Section 66–8–102(A). A person is under the influence of intoxicating liquor if "as a result of drinking liquor [the driver] was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to [the driver] and the public." UJI 14–4501 NMRA 2001; *see State v. Deming,* 66 N.M. 175, 180, 344 P.2d 481, 484 (1959); *State v. Sisneros,* 42 N.M. 500, 507, 82 P.2d 274, 278 (1938). An officer does not have to observe a suspect actually driving in an impaired manner if the officer, based upon all the facts and circumstances, has "reasonable grounds to believe that Defendant had been driving while intoxicated." *State v. Jones,* 1998–NMCA–076, ¶ 10, 125 N.M. 556, 964 P.2d 117.

{7} In this case, Officer Massis needed to have knowledge of facts sufficient to allow him, or an objectively reasonable officer in his position, to conclude that Defendant had been driving while he was "to the slightest degree" unable to exercise the clear judgment and steady hand necessary to handle a vehicle in a safe manner. The State does not argue for a general principle that refusal to perform the field sobriety testing, standing alone, constitutes probable cause for an arrest. However, the State does argue that such a refusal can be considered, in combination with other factors, to constitute probable cause.

{8} In the case before us, Officer Massis had information other than Defendant's refusal to submit to the field sobriety testing. The officer observed that Defendant smelled strongly of alcohol, and had blood-shot, watery eyes. According to the officer's testimony, Defendant had admitted to drinking two beers that night. An objectively reasonable officer could take all of these factors into account in determining whether there was probable cause to make an arrest.

{9} The State can use evidence of a driver's refusal to consent to the field sobriety testing to create an inference of the driver's consciousness of guilt. *McKay v. Davis,* 99 N.M. 29, 32, 653 P.2d 860, 863 (1982); *State v. Wright,* 116 N.M. 832, 834–36, 867 P.2d 1214, 1216–18 (Ct.App.1993). Officer Massis, or an objectively reasonable officer in his position, could logically infer from Defendant's refusal to consent to the field sobriety testing that Defendant knew he was driving under the influence of alcohol and that these tests might reveal his impairment. This inference, combined with the officer's other observations of Defendant, gave Officer Massis probable cause to arrest Defendant for DWI.

{10} Defendant attempts to rebut that inference with evidence of his leg brace. He argues that the officer should have known that there was a plausible explanation, other than consciousness of guilt, for Defendant's

refusal to perform the field sobriety testing. However, the court was entitled to find, as an issue of fact, that Defendant made no attempt to explain his refusal by referring to the leg brace or to any problems with his knees. The court was not required to conclude that the officer should have attributed Defendant's refusal to the leg brace when Defendant failed to articulate a rationale for refusing to take field sobriety tests.

{11} Defendant relies on the officer's testimony that he erroneously believed that Defendant's refusal to perform the field sobriety testing violated the Implied Consent Act. *See* § 66–8–107(A) (providing that drivers shall be deemed to have given consent to blood or breath testing). We are not persuaded by Defendant's argument. It is irrelevant that this particular officer may have been confused about the requirements of the Implied Consent Act. Probable cause is an objective test based on whether "an officer of reasonable caution [would] believe that an offense is occurring." *Salas*, 1999–NMCA–099, ¶ 10, 127 N.M. 686, 986 P.2d 482; *see also State v. Gomez*, 1997–NMSC–006, ¶ 42, 122 N.M. 777, 932 P.2d 1. "We demand that police officers at the scene of an occurrence act reasonably. We judge reasonableness by an objective standard, mindful that probable cause requires more than a suspicion, but less than a certainty." *Salas*, 1999–NMCA–099, ¶ 18, 986 P.2d 482. The trial court properly concluded that the officer had objectively reasonable grounds to justify an arrest.

{12} Defendant also relies on certain New Mexico cases in which the evidence of probable cause showed more direct or circumstantial evidence of actual impairment than the State may have demonstrated in Defendant's case. *See, e.g., Jones*, 1998–NMCA–076, ¶ 10, 125 N.M. 556, 964 P.2d 117 (articulating probable cause when defendant had been in an automobile accident, swayed while talking to police, had strong odor of alcohol, and failed the field sobriety testing); *State v. Ruiz*, 120 N.M. 534, 540, 903 P.2d 845, 851 (Ct.App.1995) (providing probable cause for arrest when officer observed that defendant was weaving, had a strong smell of alcohol, glassy eyes, and was unable to perform field

sobriety testing); *Boone v. State*, 105 N.M. 223, 227, 731 P.2d 366, 370 (1986) (remanding case to trial court to make appropriate determination on probable cause when driver had slurred speech and was unsteady on feet). Defendant's comparison with particular facts from other cases is not persuasive. Each case stands on its own facts; there is no one set of circumstances required for probable cause. In the case before us, the officer had evidence of drinking, and he observed Defendant's behavior, demeanor, and appearance. For the reasons previously discussed, this evidence, combined with the fair inferences flowing from Defendant's refusal to perform the field sobriety testing, was enough to establish probable cause. *See Salas*, 1999–NMCA–099, ¶¶ 17–18, 127 N.M. 686, 986 P.2d 482.

### The Verdict of Aggravated DWI is Supported by Substantial Evidence

{13} Because the State presented no direct evidence of impaired driving, Defendant argues that the State lacked sufficient evidence to support a verdict of aggravated DWI beyond a reasonable doubt. Section 66–8–102(D)(3) states:

Aggravated driving while under the influence of intoxicating liquor ... consists of a person who:

. . .

(3) refused to submit to chemical testing, as provided for in the Implied Consent Act [66–8–105 to 66–8–112 NMSA 1978], and in the judgment of the court, based upon evidence of intoxication presented to the court, was under the influence of intoxicating liquor....

There is no dispute that Defendant "refused to submit to chemical testing." Thus, the sole question is whether substantial evidence supports the trial court's conclusion that Defendant "was [driving] under the influence of intoxicating liquor."

{14} In reviewing a claim of insufficient evidence, we must determine whether there is substantial evidence of either a direct or a circumstantial nature to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to

conviction. *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Substantial evidence is that which is acceptable to a reasonable mind as adequate support for a conclusion. *State v. Isiah,* 109 N.M. 21, 30, 781 P.2d 293, 302 (1989), *overruled on other grounds by State v. Lucero,* 116 N.M. 450, 453–54, 863 P.2d 1071, 1074–75 (1993). We review the evidence "in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences to uphold a verdict of conviction." *State v. Sanders,* 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). The test is not whether substantial evidence would support an acquittal, but whether substantial evidence supports the verdict actually rendered. *State v. Sosa,* 2000–NMSC–036, ¶ 8, 129 N.M. 767, 14 P.3d 32. In analyzing the evidence under that standard, we disregard conflicts in the evidence that would have supported a contrary verdict.

{15} As we have seen, the trial court had before it Officer Massis' observations of Defendant's behavior and appearance, coupled with Defendant's unexplained refusal to perform field sobriety tests and his unusual demand to be taken to jail instead. The officer had evidence that Defendant had been drinking, including the odor of alcohol, bloodshot, watery eyes, and Defendant's own admission. The Court also viewed the videotape and found Defendant's statements and demeanor to be consistent with a person who was under the influence of alcohol. The trial judge characterized Defendant as "babbling" on the videotape, which could lead the court to infer that Defendant was intoxicated. The trial judge heard Officer Massis testify that, upon being placed in the patrol car, Defendant began kicking the car, which required the police to place restraints on his ankles to prevent him from hurting himself.

{16} Defendant argues that, while this evidence may be probative of Defendant's drinking, it is not probative of him being impaired or driving while impaired. Defendant maintains that there was no evidence beyond a reasonable doubt that Defendant's drinking actually affected his driving. We disagree. Although the evidence to support a conviction for DWI is marginal at best, we do not agree that the evidence is insufficient as a matter of law.

{17} Defendant came to a stop only moments before he began talking with Officer Massis and Officer Massis began observing his behavior, the same behavior viewed by the court on the videotape. As the finder of fact, the trial court could reasonably have concluded that behavior exhibited by Defendant on the videotape, and described by Officer Massis, were indicative of Defendant's condition and behavior only moments before, while he was driving. This evidence, including reasonable inferences therefrom, could have reasonably persuaded the trial court that Defendant was less able "to the slightest degree ... to exercise the clear judgment ... necessary to handle a vehicle." UJI 14–4501(2).

{18} Defendant cites to *Territory v. Lucero,* 16 N.M. 652, 655, 120 P. 304, 305 (1911), for a difference between an inference and a presumption, and particularly for that court's holding that a mere inference of guilt created by fleeing the scene of a crime is not enough, standing alone, to support a verdict of guilty. Similarly, Defendant argues that any inference of guilt from his refusal to perform the field sobriety testing was not enough to convict him.

{19} As previously discussed, the trial court had before it more than just a negative inference of guilt equivalent to fleeing the scene of a crime. If the evidence in this case were confined to Defendant's refusal to perform the field sobriety testing, the principle for which *Lucero* is cited might be appropriate. However, as we have seen, there was far more here than a mere inference of consciousness of guilt. Considered in conjunction with these other pieces of evidence, that inference was probative of Defendant's guilt.

### The Trial Court Did Not Err in Denying Defendant's Motion to Suppress His Statements at the Roadblock

{20} Officer Massis testified that once a driver is under suspicion, he holds them until he can determine through a computer check whether that driver has a valid driver's license. This process can take up to ten minutes. Officer Massis admitted that

Defendant was not free to leave while he was running the computer check.

{21} Defendant argues that the officer should have advised Defendant of his constitutional rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant argues that, at this point, he was in custody, and that it would have been unreasonable for a person in his position to believe he was free to leave. Defendant also argues that, when Officer Massis asked him questions concerning his driver's license and whether he had been drinking, those questions were designed to elicit an incriminating response and constituted interrogation. *See State v. Fekete,* 120 N.M. 290, 300–02, 901 P.2d 708, 718–20 (1995). Defendant contends that the trial court should have found that he was interrogated while in custody, without his rights being explained to him and, therefore, any statements made by him should have been inadmissible.

{22} Defendant's argument is contrary to established precedent. "The roadside questioning of a motorist pursuant to a routine traffic stop does not constitute custodial interrogation." *See Armijo v. State ex rel. Transp. Dep't,* 105 N.M. 771, 773, 737 P.2d 552, 554 (Ct.App.1987). Historically, police have been allowed to ask preliminary questions regarding a driver's license and registration, and even to make "reasonable requests ... to perform field sobriety tests," without rising to the level of custodial interrogation, which would require *Miranda* warnings. *Id.; see also Berkemer v. McCarty,* 468 U.S. 420, 421, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (questioning of a motorist pursuant to a routine traffic stop does not constitute custodial interrogation). Accordingly, we find Defendant's argument to be without merit.

### The Trial Court Did Not Err When It Refused Defendant's Motion to Appoint New Trial Counsel

{23} Defendant was unsatisfied with the legal representation he received from appointed counsel. Defendant claims that defense counsel did not fully investigate the possibility of evidence tampering in regard to the videotape that was admitted into evi-

dence. Before trial, defense counsel made a motion to have the court appoint new counsel. The trial court questioned Officer Massis about the videotape and inquired into the possibility of tampering. The court asked Officer Massis where he kept the videotape, and who had access to it. Being satisfied with the answers provided by Officer Massis, and concluding that the videotape had not been altered, the trial court denied Defendant's motion.

{24} In *State v. Hernandez,* 104 N.M. 268, 272, 720 P.2d 303, 307 (Ct.App. 1986), this Court stated that an indigent defendant has no right to choose or substitute his appointed counsel. The decision to appoint substitute counsel is within the sound discretion of the trial judge. *Id.* Defendant has not shown that the trial court abused its discretion in denying his motion for new counsel. *See id.* Defendant has not shown any likelihood that substitute counsel could have demonstrated that the videotape was, in fact, altered, or that Defendant suffered any prejudice, in connection with the videotape, because of his appointed counsel. We find Defendant's argument on this point to be without merit.

### CONCLUSION

{25} For the reasons stated above, we affirm Defendant's conviction for aggravated DWI.

{26} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO, Judge, and IRA ROBINSON, Judge (specially concurring).

ROBINSON, Judge (special concurrence).

{27} I do not find comfort in *Davis,* which holds that a defendant's refusal to submit to a field sobriety test gives rise to an inference that the defendant has a guilty conscience. I am convinced that there are other valid inferences, including that of innocence, fear of police, apprehension, and confusion that are equally reasonable, logical and realistic.

{28} Furthermore, the line of cases supporting the "reasonable officer" standard for probable cause, as opposed to allowing the

testimony of the officer on the scene to govern what constitutes probable cause for arrest, may be distinguishable. Almost all of those cases deal with a police officer who testifies that he *did* have probable cause to arrest. Here, the officer testified that he *did not* believe he had probable cause, and that is what sparked the controversy.

{29} In this case there is enough evidence to find the Defendant not guilty. The problem with such a conclusion is that we would be substituting our own judgment for that of the trial judge, and that is not our job. We must resist the temptation to re-weigh the evidence on appeal. In this case, the temptation is great because the officer at the scene testified, on cross-examination by defense counsel, that he did not find probable cause for arrest until the Defendant refused to take the field sobriety test. If this testimony stood throughout the trial, I could not concur in the majority decision to affirm. However, the trial judge asked the officer what circumstances led him to believe that he had probable cause. At that time, the officer stated that it was not just the Defendant's refusal to take the field sobriety test, but also the fact that the Defendant had watery, bloodshot eyes and an odor of alcohol on his breath. This testimony provides substantial evidence supporting the arrest and later the trial court's finding of guilt.

{30} I, therefore, concur.