This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39725**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ARIANA MONTOYA,**

      Defendant-Appellant.

**APPEAL FROM THE METROPOLITAN COURT OF BERNALILLO COUNTY**
**David A. Murphy, Metropolitan Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Luz C. Valverde, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Defendant Ariana Montoya appeals her conviction for per se driving while intoxicated (DWI). *See* NMSA 1978, § 66-8-102(C)(1) (2016). She argues probable cause did not support her arrest, and the State failed to lay a proper foundation for the admission of her breathalyzer test results. We affirm.

**BACKGROUND**

**{2}** An officer was on patrol when a black Nissan passed him at a high rate of speed. The car swerved in and out of traffic and tailgated at least two other cars. The officer did not clock the car's speed, but at one point the officer was driving at 60 miles per hour in a 35-mile-per-hour zone in an attempt to keep up. Even at 60 miles per hour, the other car continued to put distance between itself and the officer's car. Eventually, the car stopped at a red light, and the officer caught up to it and initiated a traffic stop. The officer noted that the driver—Defendant—smelled of alcohol, and her eyes were watery. Defendant told the officer she had taken prescription medication earlier.

**{3}** The officer administered two field sobriety tests, the walk and turn and the one-leg stand. He observed two out of eight indications of intoxication during the walk and turn test and three out of four during the one-leg stand test. The officer then arrested Defendant. He read the Implied Consent Act to Defendant, and she agreed to undergo breath alcohol testing. The officer administered two breath tests, which registered an alcohol concentration of .09 and .08.

**{4}** Defendant was charged with four counts: (1) DWI (first offense), (2) careless driving, (3) driving on a suspended license, and (4) open container. Before trial, the State dismissed Counts 2 and 3. After a bench trial, the court found Defendant not guilty on Count 4 and convicted her of Count 1.

**{5}** Defendant timely appealed to this Court.

**DISCUSSION**

**I.     Probable Cause Supported Defendant's Arrest**

**{6}** Defendant first challenges whether probable cause supported her arrest. The metropolitan court determined that the officer had probable cause to arrest based on the driving observed by the officer, Defendant's admission that she had taken medication earlier, the odor of alcohol, and her mixed performance on the field sobriety tests. On appeal, Defendant argues that the only evidence of impairment was that Defendant was speeding; she contends her performance on the standard field sobriety tests was nearly perfect and that the one leg stand was unreliable due to her weight.

**{7}** An officer has probable cause to arrest when "facts and circumstances within the officer's knowledge, or about which the officer has reasonably trustworthy information, are sufficient to warrant an officer of reasonable caution to believe that an offense is being committed or has been committed." *State v. Sanchez*, 2001-NMCA-109, ¶ 6, 131 N.M. 355, 36 P.3d 446. "Whether probable cause exists is a mixed question of law and fact. We review legal conclusions de novo but defer to the trial court's findings of fact. Our review of factual determinations is limited to determining whether there was substantial evidence to justify a warrantless arrest." *State v. Granillo-Macias*, 2008-

NMCA-021, ¶ 7, 143 N.M. 455, 176 P.3d 1187 (internal quotation marks and citation omitted).

**{8}** In this case the officer observed Defendant driving at a high rate of speed, swerving in and out of traffic, and tailgating at least two other cars. Defendant smelled of alcohol, had watery eyes, and admitted that she had taken prescription medication earlier. Likewise, her performance on the field sobriety tests showed impairment. In addition to the officer's testimony about the interaction, the prosecution submitted the officer's lapel cam video. The court had the opportunity to see the entire incident, make credibility determinations, and resolve conflicts in the facts. *See State v. Gonzales*, 1997-NMSC-050, ¶ 18, 124 N.M. 171, 947 P.2d 128 ("Determining credibility and weighing evidence are tasks entrusted to the trial court sitting as fact-finder.").

**{9}** While Defendant argues that her performance on the field sobriety tests was almost perfect, the officer's testimony noted multiple indications of intoxication on each test. Likewise, while Defendant argues that the walk and turn test was unreliable due to her weight, the totality of the facts and circumstances noted above were sufficient to give rise to an objectively reasonable belief that Defendant had been driving while intoxicated. *See Granillo-Macias*, 2008-NMCA-021, ¶¶ 6, 12 (holding that probable cause existed for a DWI arrest where the defendant smelled of alcohol, had difficulty balancing, and performed poorly on field sobriety tests); *Sanchez*, 2001-NMCA-109, ¶ 8 (holding that probable cause existed for a DWI arrest where the defendant smelled of alcohol, admitted to consuming alcohol, and the defendant's eyes were bloodshot and watery). The same facts and circumstances also support the conclusion that Defendant posed a danger to the motoring public, and thus, exigent circumstances justified the warrantless arrest. *See City of Santa Fe v. Martinez*, 2010-NMSC-033, ¶ 13, 148 N.M. 708, 242 P.3d 275 (noting that a DWI is treated as a felony for the purpose of warrantless arrests); *Campos v. State*, 1994-NMSC-012, ¶ 14, 117 N.M. 155, 870 P.2d 117 ("If an officer observes the person arrested committing a felony, exigency will be presumed."); *see also Martinez*, 2010-NMSC-033, ¶¶ 15-16 (noting that the warrantless arrest of a DWI suspect is justified based on concerns regarding the dissipation of evidence and the "untenable" risk of danger a DWI suspect poses to himself and to the public at large if allowed to drive away). *Cf. State v. Wright*, 2022-NMSC-009, ¶ 29, 503 P.3d 1161 (concluding the defendant posed no danger when she was off the road, parked at her home, and blocked in).

## II. The Breathalyzer Test Was Properly Admitted

**{10}** Defendant also challenges the admission of her breath test results, arguing that the State failed to lay a proper foundation showing that the machine was calibrated at the time the test was taken. "We review evidentiary rulings for abuse of discretion." *Granillo-Macias*, 2008-NMCA-021, ¶ 8. "A court abuses its discretion when it makes an evidentiary ruling that is clearly against the logic and effect of the facts and circumstances of the case and [is] clearly untenable or not justified by reason." *State v. Patterson*, 2017-NMCA-045, ¶ 11, 395 P.3d 543 (internal quotation marks and citation omitted).

**{11}** To admit the results of a breathalyzer test, the State must show that "at the time of the test, the machine was properly calibrated and that it was functioning properly." *State v. Martinez*, 2007-NMSC-025, ¶ 9, 141 N.M. 713, 160 P.3d 894. The State can meet this requirement by offering evidence that the machine was calibrated in compliance with Scientific Laboratory Division (SLD) regulations, which require that "[a] calibration check on the instrument(s) shall be conducted at least once every seven calendar days or a 0.08 calibration check shall be conducted with each subject test or both." 7.33.2.10(B)(1)(c) NMAC; *see also* 7.33.2.14(C)(2) NMAC (setting out the requirements for an evidential breath sample); *State v. Hobbs*, 2016-NMCA-022, ¶ 20, 366 P.3d 304 (noting that the calibration check ensures that the instrument produces a reading within a range specified by 7.33.2.14(C)(2) NMAC); *State v. Christmas*, 2002-NMCA-020, ¶ 10, 131 N.M. 591, 40 P.3d 1035 (noting that the state can meet its threshold showing for the admission of a breath test result by putting on evidence that the machine had been properly calibrated within one week of the test).

**{12}** During trial, the officer testified that the machine had been certified for the date range when he used it. *See Martinez*, 2007-NMSC-025, ¶ 23 (affirming that the foundational requirement for establishing certification of a breathalyzer is sufficiently established by an officer's testimony that "he saw an SLD sticker on the machine indicating that it was certified by SLD when he conducted the test"). He also testified that there was no indication it was not working properly: it passed a diagnostic check and did not show an error message. Most importantly, the trial court heard testimony from the officer regarding calibration:

> Defense: And so your testimony is that you actually calibrated it? On that day?
>
> Officer: It went through a calibration check.
>
> Defense: Right. And isn't the calibration check to. . . see if it's working properly—but that's not actually when it was calibrated. It's not calibrating at that time, right?
>
> Officer: Yes, it is. That is—that is a calibration check. And it shows it is within range.
>
> Defense: Okay. And so, the calibration check is the same as it being calibrated?
>
> Officer: No. The check shows that it was calibrated within range.
>
> Defense: Okay. And you can't testify that it was actually calibrated within a certain amount of time—you don't know when it was calibrated before the test was taken by Ms. Montoya, right?

Officer:    It was calibrated on that date. As to the time before, I don't know.

This testimony was sufficient for the trial court to infer that the instrument used to obtain Defendant's breath sample was properly calibrated when used. We perceive no abuse of discretion in the trial court's admission of Defendant's breath test results.

**CONCLUSION**

**{13}**   We affirm.

**{14}   IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**GERALD E. BACA, Judge**