This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40925

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**KAELIN BRENNA SUINA,**

Defendant-Appellee.

**APPEAL FROM THE METROPOLITAN COURT OF BERNALILLO COUNTY**
**Joshua J. Sanchez, Metropolitan Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Aletheia V.P. Allen, Solicitor General
Peter James O'Connor, Assistant Solicitor General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Plaintiff State of New Mexico charged Defendant Kaelin Brenna Suina with driving while under the influence of intoxicating liquor or drugs (DWI), contrary to NMSA 1978, Section 66-8-102(A) (2016); and driving with an open container, contrary to NMSA 1978, Section 66-8-138(C) (2013). The metropolitan court granted Defendant's motion to suppress evidence of Defendant's performance of three standard field

sobriety tests (SFST) upon a finding that the arresting deputy should have given Defendant alternative SFSTs because Defendant was overweight. The court then held that the deputy lacked probable cause to arrest Defendant for DWI. The State appeals and argues that the order granting the motion to suppress should be reversed because (1) the metropolitan court "[f]ailed to [c]onsider [o]ther [s]ubstantial [e]vidence" when it ruled that Defendant's arrest was not based on probable cause; (2) substantial evidence supports a finding of probable cause to arrest Defendant for DWI; (3) the evidence in the record does not support the metropolitan court's conclusions; and (4) the metropolitan court's rejection of all evidence regarding Defendant's performance of the SFSTs was error. For the reasons we set forth below we reverse the metropolitan court's order suppressing the evidence and dismissing the case, and remand for trial.

## BACKGROUND

**{2}** Prior to trial, Defendant filed a motion to suppress arguing that the arresting deputy lacked probable cause to arrest her for DWI. Specifically, Defendant argued that her performance of the SFSTs did not reliably indicate her intoxication because any errors in her performance may have been a result of her sciatica, and that the deputy should have offered Defendant alternative SFSTs because she was more than 50 pounds overweight.

**{3}** Based on the facts outlined in the deputy's criminal complaint and the testimony presented during a hearing on the motion, we recount what happened in this case. After midnight on July 19, 2021, a deputy with the Bernalillo County Sheriff's office responded to a call concerning an individual "passed out" in a vehicle located in a parking lot. The deputy arrived at the location and observed a vehicle parked with the headlights on. To the best of the deputy's recollection, the motor was running, however he did not know for sure.

**{4}** When the deputy approached the vehicle, Defendant was "passed out" in the driver's seat and there was vomit on the ground next to the driver's side door. The deputy opened the door and woke Defendant up. The deputy saw an open can of hard seltzer in the center console, as well as a bag of a substance he believed to be marijuana. He also observed a pipe containing what he believed to be burnt marijuana residue in the pocket of the driver's door. Defendant woke up disoriented, with slurred speech and bloodshot, watery eyes. Defendant stated she had been drinking near Balloon Fiesta Park and was driving home when she decided to pull over and call for a ride.

**{5}** Defendant agreed to get out of her vehicle and perform SFSTs. The deputy asked Defendant if she suffered from any medical conditions and although she mentioned that she experienced sciatica in her right leg, the deputy understood from Defendant's response that it did not affect her much. The weather was clear, and the testing ground was flat and clear of debris.

**{6}** Defendant performed three SFSTs: the horizontal gaze nystagmus test (HGN), the walk-and-turn test (WAT), and the one-leg stand test (OLS). On each of the three tests the deputy observed clues indicating Defendant was intoxicated.

**{7}** For the HGN, the deputy instructed Defendant to follow his fingertip with only her eyes but she failed to follow this instruction multiple times. As to the WAT, the deputy instructed Defendant to place her right foot on the ground on a line, place her left foot in front of her right foot, and place her hands on her sides until he told her to start the test. When the deputy instructed Defendant to start she was to take nine heal-to-toe steps, counting out loud on each step. When Defendant reached the ninth step she was to keep a foot planted on the ground while making a series of small steps until she turned around then make nine heal-to-toe steps back, again counting out loud on each step. The deputy demonstrated the test for Defendant. Defendant performed the test but did not step heel-to-toe on some steps, stepped off the line, and did not follow the instructions for making a proper turn.

**{8}** Finally, for the OLS the deputy instructed Defendant to stand with her arms to her side with her feet together, then, when instructed, to lift her foot six inches off the ground keeping her foot parallel to the ground, and to count out loud in thousands until he told her to stop. The deputy demonstrated the test. Defendant did not start right away when instructed to start, and did not count correctly. Defendant also swayed, and placed her foot on the ground twice.

**{9}** During cross-examination the deputy read the following excerpt from the National Highway Traffic Safety Administration (NHTSA) guidelines regarding the OLS test:

> The original SCRI studies suggested individuals over [sixty-five] years of age, people with back, leg, or inner ear problems, or people who are overweight by [fifty] or more pounds may have difficulty performing this test. Less than 1.5 [percent] of the test subjects in the original studies were over [sixty-five] years of age. There was no data containing the weight of the test subjects included in the final report. Also, the SCRI studies suggest individuals wearing heels more than [two] inches high should be given the opportunity to remove their shoes.

*Instructor Guide, DWI Detection and Standardized Field Sobriety Testing* (*SFST*), at *73 (Feb. 2018), https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/sfst_full_instructor_manual_2018.pdf (last visited August 2, 2024).

**{10}** The deputy testified that he was aware that alternative tests may be given if there is an indication the subject might be unable to perform well on a test or tests due to a health conditions; however, he saw no reason to administer such alternative tests in this case. Given the deputy's observations, including Defendant's performance on the SFSTs, he determined that Defendant was impaired and arrested her for DWI. The deputy was the sole witness to testify.

**{11}** In support of a finding of probable cause to arrest Defendant, the State referred the metropolitan court to the evidence that Defendant admitted to consuming alcohol prior to driving; passed out in her vehicle with the keys in the ignition; Defendant had blood-shot, watery eyes and slurred speech; that there was an open container of alcohol and suspected marijuana in the vehicle; and that there was vomit outside the driver door.

**{12}** As to suppression of Defendant's performance of the SFSTs, the State argued; (1) the SFSTs notation as to being overweight by 50 pounds only indicated that the weight *may* affect the OLS test; (2) being overweight only applied to the OLS test; (3) being overweight did not affect the ability to count during the OLS test or Defendant's performance on the HGN or WAT and as such, alternative tests were not required. Alternatively, the State argued that even if Defendant's weight impacted her performance on the OLS, the remaining evidence was sufficient to establish probable cause to arrest Defendant for DWI.

**{13}** Defendant argued that despite Defendant's weight, her wearing flip flops, and her suffering from sciatica, the deputy never asked follow up questions and did not offer Defendant alternative SFSTs, and accordingly the metropolitan court should suppress all testimony and find a lack of probable cause.

**{14}** The metropolitan court ruled: (1) the sciatica issue would be disregarded, as there was no evidence that Defendant's sciatica affected her performance on any of the SFSTs; (2) the marijuana observed by the deputy would also be disregarded, since no tests had been performed to confirm that it was marijuana; and (3) the court is a firm believer in the NHTSA guidelines, and was concerned that the deputy was apparently not aware that being severely overweight can affect a person's performance on at least some of the SFSTs. For these reasons, the metropolitan court suppressed all evidence regarding the SFSTs and any evidence obtained or observed after Defendant stepped out of her vehicle. The metropolitan court then found that under the totality of the circumstances, without the excluded evidence, there was no probable cause for the arrest. The court entered a written order granting Defendant's motion to suppress and dismissing the case without prejudice. This appeal followed.

## I.    Suppression of Evidence

**{15}** "Appellate review of a motion to suppress presents a mixed question of law and fact. We review factual determinations for substantial evidence and legal determinations de novo." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). "In the absence of factual findings, when the evidence conflicts, we consider the evidence that supports the district court's ruling, and we draw all inferences and indulge all presumptions in favor of that ruling." *State v. Tuton*, 2020-NMCA-042, ¶ 8, 472 P.3d 1214 (alterations, internal quotation marks, and citation omitted).

**{16}**     The purpose of the exclusionary rule, which gives rise to the suppression of evidence, is to effectuate a person's constitutional right to be free from an unreasonable search and seizure. *See State v. Trudelle*, 2007-NMCA-066, ¶ 40, 142 N.M. 18, 162 P.3d 173. As such, the rule is constitutional in nature, at least in New Mexico courts. *See State v. Wagoner*, 2001-NMCA-014, ¶ 29, 130 N.M. 274, 24 P.3d 306. From this, we conclude that the exclusionary rule does not apply to remedy legal or regulatory violations that do not otherwise imply constitutional violations. For example, even a breach of a federal statute will not lead to the suppression of evidence in New Mexico courts, barring unusual circumstances. *See State v. Casares*, 2014-NMCA-024, ¶ 18, 318 P.3d 200 (holding in a case involving a hearing-impaired defendant who, under federal law and the Department of Justice guidelines, should have been provided a sign language interpreter during his custodial interrogation, that no authority indicated that suppression of the defendant's statements was an appropriate remedy); *State v. Gonzales*, 2011-NMCA-007, ¶ 13, 149 N.M. 226, 247 P.3d 1111 (determining that even where a violation of the federal Posse Comitatus Act, 18 U.S.C. § 1385 occurs, the exclusionary rule does not apply unless, based on widespread and repeated violations of the statute, evidence should be suppressed for deterrence purposes).

**{17}**     Here, Defendant did not point to any violation of a state or federal statute. Instead, Defendant's argument before both the metropolitan court and this Court rests on a purported violation of the NHTSA guidelines, as to which we note the following: (1) nothing in the NHTSA guidelines, or at least nothing to which our attention has been directed, indicates the guidelines are mandatory or somehow have the force of law; (2) nothing in the NHTSA guidelines indicate that being severely overweight affects a person's performance on the HGN or WAT tests; and (3) the NHTSA guidelines indicate only that a person who is more than 50 pounds overweight "may" have difficulty performing the OLS test, and no expert testimony was introduced indicating that Defendant's weight actually did affect her performance on the test. *See generally Instructor Guide, DWI Detection and Standardized Field Sobriety Testing* (*SFST*), *supra* (stating that a person who is more than 50 pounds overweight may have difficulty performing the test).

**{18}**     There is no cited authority to suggest that the deputy's possible failure to follow the nonmandatory guidelines of a federal agency, with respect to only one of the three SFSTs administered, was sufficient to support the exclusion or suppression of all evidence gathered during and after Defendant's performance of the three SFSTs. *See Casares*, 2014-NMCA-024, ¶ 18 ("[A]bsent cited authority to support an argument, we assume no such authority exists."). We therefore reverse the metropolitan court's suppression of the SFSTs.[1]

---

[1]To the extent the metropolitan court disregarded the evidence concerning the marijuana seen and identified by the deputy, we observe that the court had already allowed the deputy to testify, over objection, that the substance was marijuana, after inquiring into the deputy's training and experience in identifying marijuana and other narcotics. No evidence contradicting the deputy's opinion was introduced, and the court's sole reason for disregarding the evidence was the lack of any testing of the substance to confirm that it was marijuana. However, the inquiry at the probable cause stage is not whether the substance was in fact marijuana, but whether the deputy reasonably believed it was, given his training

## II.    The Deputy Had Probable Cause to Support Defendant's Arrest for DWI

**{19}**    "Whether probable cause exists is a mixed question of law and fact. We review legal conclusions de novo, but defer to the trial court's findings of fact. Our review of factual determinations is limited to determining whether there was substantial evidence to justify a warrantless arrest." *State v. Jones*, 1998-NMCA-076, ¶ 9, 125 N.M. 556, 964 P.2d 117 (citation omitted). An officer has probable cause to arrest when the facts and circumstances within the officer's knowledge are sufficient to warrant the officer to believe that an offense has been or is being committed. *State v. Sanchez*, 2001-NMCA-109, ¶ 6, 131 N.M. 355, 36 P.3d 446. "An officer does not have to observe a suspect actually driving in an impaired manner if the officer, based upon all the facts and circumstances, has reasonable grounds to believe that [the driver] had been driving while intoxicated." *Id.* (internal quotation marks and citation omitted).

**{20}**    Our probable cause inquiry is whether it was objectively reasonable for the deputy in this case to believe that Defendant had been driving while she was to the slightest degree impaired, that is unable "to exercise the clear judgment and steady hand necessary to handle a vehicle" in a safe manner. *Id.* (internal quotation marks and citation omitted); *see* UJI 14-4501 NMRA. "We judge reasonableness by an objective standard, mindful that probable cause requires more than a suspicion, but less than a certainty." *Sanchez,* 2001-NMCA-109, ¶ 11 (internal quotation marks and citation omitted). In reviewing the evidence supporting probable cause, "[e]ach case stands on its own facts; there is no one set of circumstances required for probable cause." *Id.* ¶ 12.

**{21}**    Considering the evidence that should not have been suppressed, as well as the marijuana evidence, and all of the observations made by the deputy prior to the SFSTs, we conclude there was probable cause to support the arrest. Defendant was passed out or asleep in the driver's seat, the headlights were on, and the keys were in the ignition. Defendant admitted she had been drinking prior to driving. The deputy observed an open container of an alcoholic beverage in the center console, as well as a bag containing what he believed to be marijuana. The deputy also observed a pipe containing what he reasonably believed to be burnt marijuana residue. Defendant's speech was slurred, she had bloodshot, and watery eyes, and she seemed hesitant and disoriented. Defendant failed to follow all the directions for the HGN and WAT tests and her performance of these tests was deficient. Although the deputy did not detect an odor of alcohol on Defendant's breath, a finding of probable cause is not based upon the absence of a particular fact but rather "the facts and circumstances within the officer's knowledge." *Id.* ¶ 6; *see, e.g.*, *Schuster v. N.M. Dep't of Tax'n & Revenue*, 2012-NMSC-025, ¶¶ 30-31, 283 P.3d 288 (observing that probable cause to arrest for DWI existed based on the defendant's bloodshot, watery eyes, odor of alcohol, admission to drinking, and poor performance on SFSTs); *State v. Granillo-Macias*,

---

and experience. *See, e.g.*, *Benavidez v. Shutiva*, 2015-NMCA-065, ¶ 12, 350 P.3d 1234 (reciting the test for probable cause for arrest and stating that it requires only that the facts and circumstances within the officer's knowledge, based on reasonably trustworthy information, would cause a person of reasonable caution to believe an offense has been or is being committed).

2008-NMCA-021, ¶ 12, 143 N.M. 455, 176 P.3d 1187 (holding that an officer had probable cause to arrest for DWI where the defendant smelled of alcohol, was unsteady on his feet, and did not perform the SFSTs well); *Jones*, 1998-NMCA-076, ¶ 10 (concluding that the officer had probable cause to arrest for DWI where he noticed bloodshot, watery eyes, slurred speech, an odor of alcohol, the defendant admitted to having consumed two beers, the defendant swayed while talking to the officer, and did not perform the SFSTs well).

**{22}**    We note also that while it is a close call, we will concede for purposes of this case only that the metropolitan court could have disregarded the results of the OLS test, based on the NHTSA guidelines and Defendant's weight. While it certainly would have been preferable to hear from an expert witness who could testify as to whether being more than 50 pounds overweight did in fact affect Defendant's performance on the test, the NHTSA guidelines do recognize that the possibility and the metropolitan court as fact-finder, may have been allowed to rely on that possibility even absent the assistance of an expert's opinion. Disregarding that evidence, however, does not change the fact that the remaining evidence supports the officer's reasonable belief that Defendant was intoxicated.

## II.    Exigent Circumstances

**{23}**    Defendant argues, in addition to probable cause, exigent circumstances had to be present to allow the deputy to arrest Defendant without a warrant. Where DWI is concerned, New Mexico courts have routinely held that exigent circumstances are provided by two issues: the fact that blood alcohol level is evidence that inexorably dissipates over time, and the danger posed to the motoring public if an impaired driver is allowed an opportunity to drive away. *See City of Santa Fe v. Martinez*, 2010-NMSC-033, ¶ 15, 148 N.M. 708, 242 P.3d 275.

**{24}**    Defendant compares this case to *State v. Wright*, 2022-NMSC-009, 503 P.3d 1161 because both Defendant and the defendant in that case claimed they were waiting for someone to pick them up when they were arrested. In *Wright*, the New Mexico Supreme Court held that there was no danger to the public because the defendant was parked in her driveway, was blocked in by a reserve deputy's vehicle, and would have entered her home if she had not been unlawfully ordered by the reserve deputy to remain outside. *See* 2022-NMSC-009, ¶ 29. However, here, Defendant was parked in a public parking lot and could have exited the lot at any time to get back on the road. The exigency here is clear, and we reject Defendant's argument to the contrary.

## CONCLUSION

**{25}**    Based on the foregoing, we reverse the metropolitan court's order suppressing the evidence in this case as well as the dismissal and remand for trial.

**{26}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**